RECEIVED CLERK

Todd D. Weiler (#7671)
weiler.todd@dorsey.com
Dorsey & Whitney, LLP
170 S. Main Street, Suite 900
Salt Lake City, Utah  84101
Telephone: (801) 933-7360
Facsimile: (801) 933-7373

FILED

2007 DEC 14 P 4: 53

U.S. DISTRICT COURT
DISTRICT OF UTAH

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HYDROTECH INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WHITAKER CONSTRUCTION CO. INC., a Utah Corporation, and WESTERN SURETY COMPANY, a South Dakota corporation,<br><br>Defendants. | **COMPLAINT**<br><br>Case: 1:07cv00170<br>Assigned To : Sam, David<br>Assign. Date : 12/14/2007<br>Description: HydroTech v. Whitaker Construction et al |

Plaintiff, HYDROTECH, INC. ("HydroTech") hereby complains of Defendants,

WHITAKER CONSTRUCTION CO. INC. ("WHITAKER") and WESTERN SURETY

COMPANY ("WESTERN SURETY"), as follows:

## PARTIES AND JURISDICTION

1.     HydroTech is a Nevada Corporation with its principal place of business in

Fernley, Nevada.  HydroTech is engaged in the business of  water and sewer line and related

structures construction.  At all times relevant to this action, HydroTech was a properly licensed

contractor to perform the work on the subject project.

2.     Whitaker is a Utah corporation with its principal place of business in Box Elder

County, State of Utah.

3.     Western Surety is a South Dakota corporation that issued a bond for the Central

Weber Sewer Improvement District construction project giving rise to this litigation. The bond

was intended to insure that third parties such as HydroTech were paid in full for the work

performed.

4.     This Court has jurisdiction over the claims set forth herein pursuant to 28 U.S.C.

§ 1332 based on the diversity of citizenship between the parties.

5.     The controversy concerns contractual rights and damages claims exceeding by all

measures $75,000.00.

6.     Venue in this court is proper pursuant to 28 U.S.C. § 1391(a)(2) because a

substantial part of the events giving rise to the claim occurred and a substantial part of the

property that is subject of this action is situated in this district.

## GENERAL ALLEGATIONS

7.     In May of 2006, Whitaker, as contractor, entered into a contract with HydroTech,

as subcontractor, for HydroTech to provide labor, equipment and material for a casing removal

and relining project for the Central Weber Sewer Improvement District - South Ogden Outlet

Sewer. *See* Exhibit A. The original subcontract amount was $650,062.00.

8.     Section II of the contract provides that "Contractor shall pay the subcontractor

within 14 days after the receipt of payment." *Id.*

9.     On or about April 17, 2006, HydroTech presented a written proposal to Whitaker

that outlined its scope of work for the project. The proposal was based on the documents

provided by Whitaker and on the understanding that Whittaker Construction would provide "all

2

sewer bypassing required for [corrugated metal pipe ("CMP") ] removal and the [cured in place plastic ("CIPP")] installations; excavate a ramped trench for removal of the CMP on one en of the 36 inch casing; clean the casing for the liner installation, unless [HydroTech] is removing the carrier; all dewatering necessary for the CIPP installations; provide timely and adequate access for the lining process; provide a secure staging area for HydroTech's materials and equipment; provide a jobsite local dumpsite for hydro-vac cleaning and carrier pip debris." *See* Exhibit B. (CIPP is a method by which HydroTech vacuum impregnates a polyester felt tube with a catalyzed polyester resin. This wet-out tube is then pulled into the host pipe, inflated with air, and cooked with steam.)

10.     On or about April 18, 2006, Whitaker faxed a letter to HydroTech stating the project had been awarded using the CIPP method and the scope of work outlined in HydroTech's written proposal.

11.     On April 24, 2006, HydroTech requested an insurance certificate from Stetson Beemer Insurance for Whitaker Construction Company.

12.     HydroTech provided the insurance certificate on May 1, 2006.

13.     Although the subcontract anticipated that Whitaker would provide a copy of the project's general contract and plans to HydroTech, Whitaker failed to do so.  As a result, HydroTech has never received a copy of Whitaker's contract with the project owner or the general plans and specifications.

14.     On or about August 22, 2006, HydroTech provided Whitaker with a work and safety plan. *See* Exhibit C.

15.     On or about August 31, 2006, HydroTech provided a change conditions/extra

3

work letter to Whitaker. *See* Exhibit D. In the letter, HydroTech identified the several issues.

16.    The first issue identified in the letter was that the excavation access and sewer bypass were not timely or adequately installed causing delays to HydroTech's commencement of work. The bypass failed on August 26, 2006, which led to further delay costs and rework for HydroTech for the pipe cleaning and equipment setup.

17.    The second issue identified in the letter was that the entire carrier pipe was coated in asphalt approximately one inch thick, which caused considerable additional time and work for cutting, cleaning, pipe handling and removal. *Id.* Whitaker had failed and/or refused to disclose this information to HydroTech prior to its bidding for the work.

18.    The third issue identified in the letter was that the casing pipe had one-and-a-half inch bars/rollers welded in the bottom approximately every 10 to 20 feet. *Id.* Each of the welded items constituted an obstruction to the lining and an unforeseen changed condition. The flush cutting of each of the obstructions was time consuming and the presence of the bars severely impeded the effectiveness of the cleaning and sand removal work, causing considerable extra man hours and equipment time.

19.    The fourth issue identified in the letter was that Whitaker requested HydroTech to clean and evacuate its equipment from the pipeline to allow discontinuation of the bypass pumping over a three-day weekend. *Id.* By allowing the flow to be unimpeded, Whitaker caused the introduction of sewage flows into the casing and cleaned carrier pipe, which in turn caused extra work for HydroTech.

20.    The fifth issue identified in the letter was that on or about August 28, 2006, Whitaker directed HydroTech to discontinue its dewatering into the sewer pipe and reattach the

4

dewatering pump back to the discharge hose to the storm drain. *Id.* HydroTech expressed concerns about the sewage and asphalt being cleaned out of the carrier pipe and the possibility of the material being introduced into the river or other waterways through the detwatering. Acting at Whitaker's direction, HydroTech reattached the hose as Whitaker had originally installed.

21.     On or about September 6, 2006, HydroTech submitted a request for payment for partial costs for changed conditions/extra work. *See* Exhibit E. The basis of the request was that Whitaker Construction directed the CMP carrier pipe to be video inspected prior to removal. While attempting to perform its work, HydroTech encountered a large amounts of debris in sufficient quantities to interrupt the work and halt the inspection. The need of cleaning the debris from the pipe prior to completion of the inspection created more additional work for HydroTech.

22.     . On or about September 8, 2006, HydroTech submitted a request for payment for partial costs caused by changed conditions/extra work. *See* Exhibit F. The basis of the request was that the sewer bypass was not adequately installed, which caused delays and rework for pipe cleaning and equipment setup. In addition, work performed by HydroTech on a Friday and Saturday had to be redone after the bypass pumping failed.

23.     On or about September 22, 2006, HydroTech submitted a request for payment for partial costs for changed conditions/extra work. *See* Exhibit G. The basis of the request was that on the morning of September 15, 2006, the sewer bypass system was severely overrun due to an unseasonable and unanticipated rainfall that caused serious flooding. The unanticipated asphalt, removal for cutting, and dealing with asphalt during cleaning had created an interference with the pumping and pipe handling. The asphalt had also continuously clogged the intake on the

5

dewatering pump decreasing the efficiency and increasing work time. The asphalt also substantially increased the weight of the pipes so movement and handling thereof was only possible with the use of heavy equipment. HydroTech also restated the continuing costs incurred by the interference during cleaning and pipe removal created by the bar/rollers and loops welded in the casing.

24.     On or about September 26, 2006, HydroTech sent Whitaker a partial list for changed conditions. *See* Exhibit H.

25.     On October 5, 2006 and October 10, 2006 HydroTech sent letters to Whitaker following up on a site meeting that occurred on September 26, 2006. *See* Exhibits I. The letters presented the details of the changed conditions/extra work.

26.     On October 18, 2006, HydroTech sent a letter to Whitaker stating that it was concerned about any midstream change in the type and method of the liner installation. *See* Exhibit J. Acting in good faith, HydroTech had mobilized, ordered and/or purchased liners, resin, and catalysts, performed preparatory host pipe work, shipped and stored the material due to the delays, prepared the liner for installation and provided appropriate cold storage for the ready-to-install liner.

27.     In a memorandum dated October 27, 2006, Whitaker acknowledged to HydroTech that additional compensation may be justifiable due to the circumstances described above, and the amount determined after the paperwork was submitted. *See* Exhibit K.

28.     On November 13, 2006, Whitaker responded to HydroTech's change requests by requesting additional information. *See* Exhibit L. Whitaker's response included a table showing each change request, its costs and the reason it was not recommended.

29.     On or about November 16, 2006, HydroTech wrote in a letter to Whitaker that it was eager to comply with whatever was needed within the contract requirements. HydroTech also stated that it was unaware of any contract requirement of submitting daily logs (as such a requirement was not included in its subcontract with Whitaker and it had not been provided a copy of Whittaker's general contract). HydroTech requested documentation showing that the daily logs were part of a contract requirement.

30.     HydroTech has fully completed all of the work on the project in a timely and workmanlike manner. HydroTech completed its work on or about November 6, 2006.

31.     Upon information and belief, Whitaker has received payment in full from Central Weber Sewer Improvement District for all of the work performed on the project, including some of the work performed by HydroTech.

32.     Despite the express language in the contract between Whitaker and HydroTech, Whitaker has failed and refused to remit full payment to HydroTech within 14 days of receiving payment from Central Weber Sewer Improvement District as per the contract, and also refused to remit payment within 30 days as per state law. In addition, HydroTech has made repeated requests and demands for payment, all of which have been refused by Whitaker. *See e.g.* Exhibits M and N (Letters of July 13, 2007 and August 24, 2007).

33.     As of August 24, 2007, HydroTech had still not received any substantive response from Whitaker addressing the requests in its letter of November 16, 2006 – nor had it received a copy of the general contract. *See* Exhibit N. In addition, Whitaker had still not notified HydroTech of any job acceptance or proposed final estimate for the closeout of the project. In the same correspondence, HydroTech also requested a copy of any payments or performance

bonds posted on the project, a copy of Whitaker's contract with the project owner and a full copy of the plans and specifications. *Id.*

34.    Since the project is a public project owned by the Central Weber Sewer Improvement District, HydroTech cannot record a mechanic's lien against the improved real property. Since sub-contractors are not entitled to lien public property, Whitaker was required to post a bond to guarantee payment to subcontractors like HydroTech. *See* Exhibit O (Payment Bond 929396332.).

35.    Since Whitaker has refused to make payment to HydroTech for the work that it fully and timely performed on the project, HydroTech has made demand on the bond issued by Western Surety Company. *See* Exhibits P and Q (Letters of August 31, 2007 and September 4, 2007).

36.    When Whitaker learned of HydroTech's bond claim, Whitaker wrote to HydroTech's on August 24, 2007 and stated that that the project had been officially closed in June of 2007. Whitaker also mailed a check to HydroTech in the amount of $18,444.75, but the check contained the words "satisfaction of all claims" as a qualified endorsement. (This amount was calculated by Whitaker as follows: $2,500 for spacers and carrier pipe removal, $2,300 for seal leaks, $3,118.80 for downtime for concrete block removal, and $10,525.95 for asphalt liner cutting.)

37.    Since HydroTech adamantly disputes that the amount represents a full payment, it did not negotiate the check. HydroTech did not negotiate the check because it is seeking damages in the amount of $675.51 for extra work televising and $1,500.00 for removal of cleaning equipment. Both of these items were agreed to by Whitaker prior to the performance of

8

work on the project. HydroTech is further seeking damages for $5,196.38 for bypass failure work on August 26, 2006 and an additional $24,684.35 for the bypass failure of September 15, 2006. On both of those occasions, had a duty to perform the cleanup work and failed to do so. As a result, HydroTech was forced to clean out the rocks and gravel so that it could continue its work. Had it not done so, the work could not have been completed in a timely manner.

38.     The contract clearly delineated the fact that Whitaker was to provide the bypass pumping, and Whitaker failed to do so. Since Whitaker failed to provide the bypass pumping, HydroTech was forced to step in and clean out the pipes.

39.     HydroTech is also seeking damages in the amount of $3,537.38 for the seven (7) linear feet it was shorted on the 27 inch liner, plus other amounts which total an amount in excess of $101,000. Whitaker has previously acknowledged that it owes HydroTech for this amount.

40.     The subcontract also provided that Whitaker was to provide timely and adequate access for the lining process. When HydroTech showed up to work, it learned for the first time that the excavation was not complete and that the concrete had not been removed. As a result, HydroTech was forced to have its crews wait and standby for the concrete removal, which resulted in a loss of $10,818.62. Of that amount, Whitaker has already agreed that it owes $3,118.80 as part of the check for $18,444.75, which leaves a remaining $7,699.82 in damages on that item.

41.     HydroTech has demanded that Western Surety Company tender payment to HydroTech in the amount of $18,444.75 (plus statutory interest) as Whitaker has acknowledged in writing that it owes at least that amount. *See* Exhibit R.

9

42.     On November 5, 2007, Whitaker stated in writing that it does not dispute that the bypass failed, but still did not intend to pay HydroTech for the extra work involved therewith. *See* Exhibit S.  Whitaker also admitted that a bypass failure took place on September 15, 2006, but claimed it was caused by an "act of God" and is therefore not liable to HydroTech for the increased costs associated therewith.

43.     On or about December 12, 2007, Whittaker sent a second check to HydroTech in the amount of $18,444.75; the second check did not contain any qualified endorsements. *See* Exhibit S.  The check was accompanied by a letter from Whitaker stating that it would not pay an additional amounts to HydroTech. *Id.* Subtracting that amount from the balance owed, HydroTech is seeking damages in an amount in excess of $101,000 from Defendants for the items listed above, and reserves the right to demand additional amounts if issues cannot be resolved with Whitaker.

## FIRST CAUSE OF ACTION
### (Declaratory Relief - Whitaker)

44.     HydroTech incorporates the allegations contained in paragraphs 1-43 above as though set forth herein verbatim.

45.     The terms, obligations, and conditions of the subcontract between Whitaker and HydroTech are an accurate reflection of the agreements and mutual assent between HydroTech and Whitaker.

46.     HydroTech is entitled to a declaratory judgment that the subcontract is a valid, legally binding contract between HydroTech and Whitaker.

47.     HydroTech is further entitled to a declaratory judgment that, pursuant to the terms of the Subcontract, it was entitled to payment for work performed within 14 days of the project owner's payment, together with interest thereon.

48.     Pursuant to terms of the subcontract, HydroTech is entitled to an award of reasonable attorney's fees incurred in bringing this action.

## SECOND CAUSE OF ACTION
### (Declaratory Relief – Western Surety)

44.     HydroTech incorporates the allegations contained in paragraphs 1-48 above as though set forth herein verbatim.

45.     The terms, obligations, and conditions of the payment bond 929396332 were to guarantee payment to subcontractors like HydroTech in the event that Whitaker failed to make full payment in a timely manner.

46.     HydroTech is entitled to a declaratory judgment that it is entitled to payment in full from the payment bond for services rendered.

47.     HydroTech is entitled to an award of reasonable attorney's fees incurred in bringing this action.

## THIRD CAUSE OF ACTION
### (Breach of Contract - Whitaker)

48.     HydroTech incorporates the allegations contained in paragraphs 1-47 above as though set forth herein verbatim.

49.     The Subcontract constituted a valid and enforceable contract.

50.     HydroTech has fully performed its obligations arising from the subcontract.

51. Whitaker has failed to perform its express contractual obligations as set forth in the subcontract. To the extent that HydroTech has not performed, Whitaker is the sole and exclusive cause of HydroTech' lack of performance.

52. Specifically, Whitaker has breached the terms of the Subcontract by, among other things, failing to pay HydroTech in full within 14 days of receiving payment from the project owner.

53. Whitaker's breach of the express terms of the subcontract has resulted in harm to HydroTech.

54. HydroTech has been damaged by Whitaker's breach of the Subcontract in an amount to be proved with specificity at trial, but believed to be in excess of $75,000.

55. Pursuant to terms of the Subcontract, HydroTech is also entitled to an award of costs and reasonable attorney's fees incurred in bringing this action.

## FOURTH CAUSE OF ACTION
### (Failure to Make Bond Payment – Western Surety)

56. HydroTech incorporates the allegations contained in paragraphs 1-55 above as though set forth herein verbatim.

57. Whitaker and Western Surety intended that HydroTech to have a right to enforce and otherwise make a claim against payment bond 929396332.

58. Whitaker and Western Surety clearly intended that as a subcontractor, HydroTech would receive a separate and distinct benefit from the bond.

59. An examination of the payment bond shows that Whitaker and Western Surety clearly intended to confer a separate and distinct benefit upon HydroTech.

60.     HydroTech has a valid claim against Whitaker thereby entitling it to payment from the bond consistent with the terms of the bond.

## FIFTH CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing – Whitaker)

61.     HydroTech incorporates the allegations contained in paragraphs 1-60 above as though set forth herein verbatim.

62.     Whitaker has failed to act in good faith and fair dealing in performing its contractual obligations as set forth in the Subcontract.

63.     Specifically, Whitaker has breached the implied covenant of good faith and fair dealing by, among other things, refusing to make full and timely payment to HydroTech for services rendered.

64.     Whitaker's breach of the implied covenant of good faith and fair dealing has resulted in harm to HydroTech.

65.     HydroTech has been damaged by Whitaker's breach of the covenant of good faith and fair dealing in an amount to be proved with specificity at trial, but believed to be in excess of $75,000.

66.     Pursuant to terms of the Subcontract, HydroTech is entitled to an award of costs and reasonable attorney's fees incurred in bringing this action.

## SIXTH CAUSE OF ACTION
### (STATUTORY CLAIMS PURSUANT TO U.C.A. § 58 55 603)

67.     HydroTech incorporates the allegations contained in paragraphs 1-66 above as though set forth herein verbatim.

68.     Utah Code Ann. § 58-55-602(1) provides that "All unpaid construction funds are payable to the contractor as provided in Section 13-8-5." Section 58-55-602(4) provides that "If any payment is retained or withheld, it shall be retained or withheld and released as provided in Section 13-8-5."

69.     The relevant portions of section 13-8-5 provide as follows:

"(3) (a) Notwithstanding section 58-55-603, the retention proceeds withheld and retained from any payment due under the terms of the construction contract may not exceed 5 percent of the payment . . . (ii) by the original contractor to any subcontractor;

(3) (b) The total retention proceeds withheld may not exceed 5 percent of the total construction price."

* * *

"(10) (a) In any action for the collection of the retained proceeds withheld and retained in violation of this section, the successful party is entitled to: (i) attorney's fees; and (ii) other allowable costs.

(b) (i) Any owner, public agency, original contractor, or subcontractor who knowingly and wrongfully withholds a retention shall be subject to a charge of 2 percent per month on the improperly withheld amount, in addition to any interest otherwise due.

(ii) The charge described in Subsection (10)(b)(i) shall be paid to the contractor or subcontractor from whom the retention proceeds have been wrongfully withheld.

(11) A party to a construction contract may not require any other party to waive any provision of this section."

14

69.     Utah Code Ann. § 58-55-603 provides that "when a contractor receives any construction funds from an owner or another contractor for work performed and billed, he shall pay each of his subcontractors and suppliers in proportion to the percentage of the work they performed under that billing, unless otherwise agreed by contract." The section further provides that if "the contractor fails to pay for work performed by his subcontractors or suppliers within 30 consecutive days after receiving construction funds from the owner or another contractor for work performed and billed, or after the last day payment is due under the terms of the billing, whichever is later, he shall pay to the subcontractor or supplier, in addition to the payment, interest in the amount of 1 percent per month of the amount due, beginning on the day after payment is due, and reasonable costs of any collection and attorney's fees."

70.     Section 58-55-603 provides as follows:

"(1) When a contractor receives any construction funds from an owner or another contractor for work performed and billed, he shall pay each of his subcontractors and suppliers in proportion to the percentage of the work they performed under that billing, unless otherwise agreed by contract.

(2) If, under this section and without reasonable cause, or unless otherwise agreed by contract, the contractor fails to pay for work performed by his subcontractors or suppliers within 30 consecutive days after receiving construction funds from the owner or another contractor for work performed and billed, or after the last day payment is due under the terms of the billing, whichever is later, he shall pay to the subcontractor or supplier, in addition to the payment, interest in the amount of 1 percent per month of the amount due, beginning on the day after payment is due, and reasonable costs of any collection and attorney's fees."

15

71.     Under the circumstances, HydroTech is entitled to damages pursuant to Sections
602, 603 and 604 in this matter, including interest of one percent per month, costs, and attorney's
fees. Pursuant to Utah Code Ann. § 13-8-5(10)(b)(i), HydroTech should be awarded damages of
2 percent per month on the improperly withheld amount, *in addition to any interest otherwise
due*.

## SEVENTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

72.     HydroTech incorporates the allegations contained in paragraphs 1-71 above as
though set forth herein verbatim.

73.     HydroTech performed construction-related casing removal and relining services
for Whitaker who received and benefited from the same.

74.     HydroTech performed such services with the understanding and expectation that
Whitaker would pay for the same.

75.     HydroTech was not acting as a volunteer or intermeddler in providing services for
Whitaker on the project.

76.     To permit Whitaker to retain the benefit of HydroTech's services after having
received full payment from the project owner without compensating HydroTech for those
services would constitute an unconscionable and unjust enrichment of Whitaker at HydroTech's
expense.

77.     As a direct result and proximate result of Whitaker's unjust enrichment at the
expense of HydroTech, HydroTech has suffered damages, costs and expenses in an amount to be
proven at trial, but in no event less than $101,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.      On the First Claim For Relief, a declaratory judgment stating that HydroTech has a legally binding contract with Whitaker, and is entitled to be paid in full for services rendered.

2.      On the Second Claim For Relief, a declaratory judgment stating that HydroTech is a third-party beneficiary of Western Surety's payment bond, and that Western Surety is liable to pay HydroTech for work performed on the construction project in the event that Whitaker fails to pay.

3.      On the Third Claim For Relief, a judgment awarding HydroTech compensatory damages against Whitaker for all damages sustained as a result of defendants' wrongdoing in an amount to be determined at trial, including interest thereon.

4.      On the Fourth Claim For Relief, a judgment awarding HydroTech compensatory damages against Western Surety for all damages sustained as a result of defendants' wrongdoing in an amount to be determined at trial, including interest thereon.

5.      On the Fifth Claim For Relief, a judgment awarding HydroTech compensatory damages against Whitaker for all damages sustained as a result of defendants' wrongdoing in an amount to be determined at trial, including interest thereon.

6.      On the Sixth Claim For Relief, a judgment awarding HydroTech compensatory damages, including statutory interest and penalties, against Whitaker for all damages sustained as a result of defendants' wrongdoing in an amount to be determined at trial, including interest thereon.

7.      On the Seventh Claim For Relief, for a judgment that Defendants have been unjustly enriched as a result of receiving goods and services from HydroTech without compensating HydroTech for such goods and services as alleged herein.

8.      An award of punitive damages against defendants for conduct that has been willful, malicious, and/or has manifested a knowing and reckless indifference toward and a disregard of the rights of plaintiffs.

9.      An award of HydroTech's reasonable costs and expenses incurred in this action, including attorneys' and expert witness fees and other cost, along with pre-judgment and post-judgment interest.

10.     An award of declaratory relief and such other and further relief as the Court may deem just and appropriate under the circumstances.

DORSEY & WHITNEY LLP

By _____
Attorneys for HydroTech, Inc.

DATED this 14 day of December, 2007.

DORSEY & WHITNEY LLP
170 South Main Street, Suite 900
Salt Lake City, Utah 84101-1655
Telephone: (801) 933-7360

18